IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DATAQUILL LIMITED,<br><br>        Plaintiff,<br><br>v.<br><br>GOOGLE LLC and ALPHABET, INC.<br><br>        Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendants Google LLC and Alphabet Inc. (collectively "Google") that relates to U.S. patent 6,058,304 owned by DataQuill Limited ("DataQuill").

## PARTIES

1. Plaintiff DataQuill Limited is a limited company organized under the laws of the British Virgin Islands.

2. Defendant Google LLC is a Delaware company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google LLC's registered agent for service is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3. Google LLC does business across the United States, including in the State of Delaware and in the District of Delaware.

4. Defendant Alphabet Inc. is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Alphabet Inc.'s registered agent for service is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Alphabet Inc. is the parent holding company of Google LLC. Alphabet Inc. owns all the equity interest in Google LLC.

5. Alphabet, Inc. does business across the United States, including in the State of Delaware and in the District of Delaware.

6. For the relevant time periods of this action, Google made, used, imported, offered for sale and sold in the United States: wireless mobile devices under the brand names Nexus and Pixel; Android OS; and the Google Play app for Android OS.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and more particularly 35 U.S.C. § 271.

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. Each Google Defendant is subject to this Court's jurisdiction because it is organized under Delaware law or incorporated in the State of Delaware.

10. Venue is proper in this District under 28 U.S.C. §1400(b), because each Google Defendant is organized under Delaware law or incorporated in Delaware.

## BACKGROUND FACTS REGARDING THE DATAQUILL PATENTS

11. DataQuill is the owner of record and assignee of U.S. Patent No. 6,058,304 ("the '304 Patent") (the "Patent-in-Suit"). Ex. A.

12. DataQuill has sought to protect its invention through a licensing program (which has on several occasions required litigation). Many of the largest high-tech companies, including HTC, Nokia, Motorola, LG, Samsung, Palm, and Hewlett-Packard, have purchased a license to DataQuill's patent portfolio. To date, DataQuill has obtained over $128 million in licensing revenue.

13. The value of DataQuill's asserted patent is further demonstrated by DataQuill's repeated success against validity challenges. The Patent-in-Suit has been through a reexamination at the United States Patent and Trademark Office where hundreds of references have been considered. In 2020, the Patent Trial and Appeal Board denied institution of an *inter partes* reexamination of the Patent-in-Suit.

14. In 2021, the United States Patent and Trademark Office ordered a second reexamination of the Patent-in-Suit that is currently pending for claims that are not presently asserted in this complaint.

15. In prior litigations, the Patent-in-Suit withstood heavy scrutiny, including motions for summary judgment of anticipation, obviousness, inequitable conduct, lack of enablement, and lack of an adequate written description—all of which were resolved in DataQuill's favor. Most recently, a jury returned a verdict finding certain claims of the '304 Patent valid and infringed in a case against ZTE.  The jury determined that DataQuill had been damaged in the amount of $31,500,000.

## THE PATENTS-IN-SUIT AND CLAIMS-IN-SUIT

16. DataQuill has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patent-in-Suit during all relevant time periods.

17. On May 2, 2000, the '304 Patent entitled "Data Entry Systems" was duly and legally issued by the USPTO. On April 13, 2010, the USPTO issued an Ex Parte Reexamination Certificate for the '304 Patent.

## GOOGLE'S INFRINGING PRODUCTS

18. Google made, used, offered for sale, sold, and imported into the United States smartphones that enable users to browse and download items such as apps, games, ringtones, music, videos, books, and magazines. These devices include but are not limited to the following models: Nexus 6, Nexus 5X, Nexus 6P, Pixel, Pixel XL. The devices are a subset of, and collectively referred to as, ("Accused Google Smartphones").

19. In addition to the specific models listed above, for the purpose of direct infringement, the "Accused Google Smartphones" are all Google smartphones that incorporated a touch-sensitive screen and the Android operating system ("Android OS") that were offered for sale or sold in the United States between the period that is six years before the filing date of this complaint and the expiration of the Patent-in-Suit.

20. Google made, used, offered for sale, sold, and imported into the United States tablet computers that enable users to browse and download items such as apps, games, ringtones, music, videos, books, and magazines.

21. For the purpose of direct infringement, these devices include all tablet computers that incorporate a touch-sensitive screen including without limitation a touch-sensitive screen with a 7-inch or smaller diagonal size and Android OS that were offered for sale or sold in the United States between the period that is six years before the filing date of this complaint and the expiration of the Patent-in-Suit ("Accused Google Tablets").

22. Google directly infringed claims of the Patent-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Accused Google Smartphones and/or Accused Google Tablets ("Accused Google Smartphones and Tablets") in this District and elsewhere in the United States that include the systems claimed in the Patent-in-Suit.

23. For the purpose of indirect infringement, the "Accused Smartphones" include the "Accused Google Smartphones" and all unlicensed Android smartphones that incorporated a touch-sensitive screen, Android OS, and the Google Play app for Android OS, that were offered for sale or sold in the United States between the period that is six years before the filing date of this complaint and the expiration of the Patent-in-Suit.

24. For the purpose of indirect infringement, the "Accused Tablets" include the "Accused Google Tablets" and all unlicensed Android tablet computers that incorporated a touch-sensitive screen including without limitation a touch-sensitive screen with a 7-inch or smaller diagonal size, Android OS, and the Google Play app for Android OS, that were offered for sale or sold in the United States between the period that is six years before the filing date of this complaint and the expiration of the Patent-in-Suit.

25. Google indirectly infringed claims of the Patent-in-Suit, inducing direct infringement pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing Accused Google Smartphones and Tablets in this District and elsewhere in the United States that were designed and intended to use and/or practice the methods and processes covered by the Patents-in-Suit. Further, Google induced infringement by, for example, providing user guides and other support materials and services for Accused Google Smartphones and Tablets to its users and by advertising features of Accused Google

Smartphones and Tablets that are used, and benefits that are achieved through use of the Patent-in-Suit.

26. Google indirectly infringed claims of the Patent-in-Suit, inducing direct infringement pursuant to U.S.C. § 271(b) in this District and elsewhere in the United States by, for example: licensing and providing Android OS and other support materials and services to third-party mobile device manufacturers that made, used, offered for sale, sold and/or imported, in this District and elsewhere in the United States, Accused Smartphones and/or Accused Tablets; and advertising features of Android OS that are used, and benefits that are achieved through use of the Patent-in-Suit.

27. Google indirectly infringed claims of the Patent-in-Suit, contributing to direct infringement pursuant to U.S.C. § 271(c) in this District and elsewhere in the United States by, for example: licensing and providing Google Play for Android OS and other support materials and services to third-party mobile device manufacturers that made, used, offered for sale, sold and/or imported, in this District and elsewhere in the United States, Accused Smartphones and/or Accused Tablets that incorporated Android OS and a touch-sensitive screen and/or tablets that incorporated Android OS and a touch-sensitive screen including but not limited to screens that were 7-inch or smaller diagonal size; and advertising features of Google Play for Android OS that are used, and benefits that are achieved through use of the Patent-in-Suit.

28. Despite Google's awareness of the Patent-in-Suit, Google continued these acts of inducement and contribution with specific intent to cause and encourage direct infringement of the Patent-in-Suit with knowledge or willful blindness that such activities occurred and constituted direct infringement of the Patent-in-Suit.

## GOOGLE'S KNOWLEDGE OF THE PATENT-IN-SUIT,
## HOW GOOGLE INFRINGES IT, AND
## GOOGLE'S CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE

29. At least as early as January 13, 2010, DataQuill, through counsel, provided a notice letter to Google regarding the '304 Patent. Ex. B.

30. Google did not enter into a license agreement with DataQuill following the January 2010 letter.

31. Despite knowledge of the Patent-in-Suit and knowledge of the manner in which the Patent-in-Suit were infringed, Google continued to infringe, and induce the infringement of, the Patent-in-Suit.

### COUNT I: INFRINGEMENT OF PAT. 6,058,304

32. DataQuill reasserts and realleges paragraphs 1 through 31 of this Complaint as though set forth fully here.

33. Google directly infringed the '304 Patent in the State of Delaware, in this judicial district, and elsewhere within the United States by making, using, offering for sale, selling, and/or importing Accused Google Smartphones and Tablets that infringe one or more claims of the '304 Patent.

34. Accused Google Smartphones and Tablets sold by Google infringed at least claim 101 of the '304 Patent, for example as explained in the following paragraphs (35-49) with reference to Accused Google Smartphones.

35. The Accused Google Smartphones are data entry devices for use in a data entry system.

36. Each Accused Google Smartphone contains at least one reading sensor. "Reading sensor" has been repeatedly construed by several courts to cover a touchscreen. Each Accused

Google Smartphone has a touchscreen. The touchscreen is a reading sensor responsive to commands and/or sensed commands and data. The touchscreen produces input signals.

37. For example, the touchscreen of each Accused Google Smartphone is responsive to commands and/or sensed commands and data that enable a user to navigate and download Google Play Products from Google Play.

38. The Accused Google Smartphones contain a controller coupled to the reading sensor to receive and process input signals from the touchscreen, e.g., circuitry coupled to the touchscreen including the touchscreen controller and processor. This circuitry responds to input signals to control the Accused Google Smartphones and to select items.

39. The Accused Google Smartphones' controller is coupled to a communications interface to selectively control transmission over said communications interface of command and/or data signals as determined by said input signals processed by the controller.

40. For example, Accused Google Smartphones contain a communications interface (e.g., the GSM/GPRS/UMTS/ HSDPA/HSUPA/HSPA+/DC-HSDPA/EDGE/CDMA/EV-DO/3G/4G/LTE/FDD-LTE/TD-LTE circuitry). The communications interface is coupled to the controller. The communications interface provides for transmission of commands and/or data signals as determined by input signals processed by the controller in several ways including: commands and/or data signals are transmitted over the communications interface when a user navigates Google Play and selects to view additional information about an item or to rate or review an item or when a user chooses to download an item from Google Play.

41. The Accused Google Smartphones contain a communications interface (e.g., the GSM/GPRS/UMTS/HSDPA/HSUPA/HSPA+/DC-HSDPA/EDGE/CDMA/EV-DO/3G/4G/LTE/FDD-LTE/TD-LTE circuitry) that directly connects the Accused Google

Smartphones to a wireless telecommunications network. This connection is made over a wireless telecommunications network via an antenna.

42. The Accused Google Smartphones contain a touchscreen display coupled to a controller to display commands and/or information under control of the input signals processed by the controller. For instance, the Google Play store displays buttons under the control of input signals the Accused Google Smartphones' controller processes.

43. The Accused Google Smartphones' reading sensors, controllers, and displays comprise a unitary assembly. The Accused Google Smartphones are sold as complete, integrated units. The Accused Google Smartphones' touchscreens comprise a reading sensor and a display. The controller is located within the Accused Google Smartphones.

44. The Accused Google Smartphones contain a communications interface (e.g., the GSM/GPRS/UMTS/HSDPA/HSUPA/HSPA+/DC-HSDPA/EDGE/CDMA/EVDO/3G/4G/LTE/FDD-LTE/TD-LTE circuitry) that is a cellular telephone network interface. The cellular telephone network interface directly connects the Accused Google Smartphone to a wireless telecommunications network that is a cellular telephone network.

45. Each Accused Google Smartphones is a data entry device integral with a cellular telephone. The Accused Google Smartphones comprise both a data entry device and a cellular telephone.

46. The controller is configured to respond to a user update command by downloading information required for updating information previously stored in the Accused Google Smartphones. For example, a user can choose to update a user selectable application by tapping the "UPDATE" button. The existing application was previously stored on the Accused

Google Smartphones, and the "UPDATE" button initiates a download of information to update that application. Additionally, when a user accesses Google Play by tapping the Google Play icon, information required for updating applications (e.g., whether an update is available, app permission information) is downloaded from a remote processing center (e.g., one or more of the servers that operate Google Play). An update may be available if the user previously downloaded and stored said app.

47. The Accused Google Smartphones comprise a touchscreen, which is a carrier. "Carrier" has been construed by multiple courts to mean "a medium that carries one or more data and/or command codes." The touchscreen is a medium associated with displaying a plurality of data and/or command codes. The data and/or command codes are displayed on the screen as buttons, links, or icons. The touchscreen is associated with displaying a plurality of user selectable items, such as Google Play Products.

48. The Accused Google Smartphones' touchscreens carry a plurality of codes representing natural language characters and numbers, as well as commands for controlling operation of the data entry and/or merchandising systems. For natural language characters and numbers, the Accused Google Smartphones display a keyboard that can be used to input information. For commands, the touchscreen displays apps, buttons, or links that a user may select to control the system.

49. Each code is associated with a visual representation displayed on the Accused Google Smartphones' screens. The codes may be product identifications such as links to products on the Google Play store.

50. In addition to claim 101, by way of example, Google infringed at least independent claims 78, 80-81, 83, and 86 of the '304 Patent and at least the following dependent

claims (as depending from specific independent claims): 13 (12); 45 (44); 55 (53);  40 (78); 59 (78); 60 (78); 32 (81); 34 (81); 35 (81); 44 (78, 81); 53 (78 or 81); 56 (78 or 81); 57 (78 or 81); 20 (86, 83, or 86); 12 (80, 83, 86, or 101); 22 (80, 83, 86, or 101); 23 (80, 83, 86, or 101); and 9 (101).

51. Google is thus liable for infringement of the '304 Patent under 35 U.S.C. § 271(a).

52. With knowledge of the '304 Patent and knowledge of the infringing nature of Accused Google Smartphones and Tablets (or, at a minimum, willful blindness thereto), Google has encouraged its retailers to directly infringe the '304 Patent by offering to sell and selling these devices to end user consumers. Google knew of and intended to cause its retailers' direct infringement and is therefore liable for actively inducing their infringement of the '304 Patent under 35 U.S.C. § 271(b).

53. With knowledge of the '304 Patent and knowledge of the infringing nature of Accused Google Smartphones and Tablets (or, at a minimum, willful blindness thereto), Google has encouraged end users to directly infringe the '304 Patent by using these devices. Google has marketed, promoted, and instructed users to use these devices in an infringing manner. This marketing, promotion, and instruction has specifically included instructions to use the devices' functionality to download apps, games, music, videos, books, magazines, and ringtones. Google knew of and intended to cause its end users' direct infringement and is therefore liable for actively inducing their infringement of the '304 Patent under 35 U.S.C. § 271(b). *See* Ex. C, Attach. 3-7 (advertising the availability of Google Play app for Android on mobile devices), Attach 8 to 15 (advertising features of the Google Play app on mobile devices including downloading and purchasing apps, music, ringtones, and updating apps).

54. Google indirectly infringed the Patent-in-Suit by actively inducing the direct infringement of claims of the Patent-in-Suit pursuant to U.S.C. § 271(b) in this District and elsewhere in the United States by, for example: licensing and providing Android OS and other support materials and services (*see, e.g.*, Ex. C, Attach. 1-2) to third-party mobile device manufacturers that made, used, offered for sale, sold and/or imported, in this District and elsewhere in the United States, Accused Smartphones that incorporated Android OS and a touch-sensitive screen and/or Accused Tablets that incorporated Android OS and a touch-sensitive screen including but not limited to screens that were 7-inch or smaller diagonal size; and advertising features of Android OS that are used, and benefits that are achieved through use of the Patent-in-Suit (*see* Ex. C, Attach. 3 to 15 (advertising [1] the availability of Google Play app for Android on mobile devices and [2] features of the Google Play app on mobile devices including downloading and purchasing apps, music, ringtones, and updating apps).

55. Google was aware of the '304 patent by at least 2010. DataQuill sent a letter on January 13, 2010 by facsimile and U.S. mail to Google's General Counsel notifying Google that mobile devices incorporating Google's Android OS directly infringed the '304 patent. The letter stated:

> U.S. Patent no. 6,058,304 . . . re viol. notice . . . . We represent DataQuill Limited . . . . It has come to our attention that Google has manufactured, offers for sale and/or sells, etc. systems and devices including its Nexus One line of mobile phone devices with Android OS. You may wish to have your patent counsel examine the claims of the referenced patents relative to Google's devices and systems to determine whether a non-exclusive license or appropriate covenant not to sue is needed. See, for example only, '304 patent e.g., dependent claims 18, 21 (as depending e.g. from claim 2) . . . .

Ex. B at 2 (Letter to Google).

56. Google was aware of the '304 patent because its subsidiary Google Technology Holdings LLC is the assignee of US Patent No. 6,393,079, which cites the '304 patent.

57. Google was aware of the '304 patent because over 100 U.S. patents that issued after April 2010 have cited the '304 patent as prior art.

58. Google was aware of the '304 patent because DataQuill has asserted claims of the reexamined patent's claims in litigation against major manufacturers of smartphones that incorporate a touchscreen, Android OS, and the Google Play app for Android OS, including ZTE in the Eastern District of Texas jury trial that resulted in a $31.5 million dollar verdict and including HTC, Huawei, and TCL.

59. Google was aware of the '304 patent and specification because: DataQuill's Patent No. 7,505,785 is a continuation of the '304 patent and shares the same specification as the '304 patent; and dozens of Google patents cite DataQuill's '785 patent (e.g., 7,990,556; 8,005,720; 8,019,648; 8,064,700; 8,081,849; 8,146,156; 8,179,563; 8,214,387; 8,261,094; 8,346,620; 8,418,055; 8,442,331; 8,447,066; 8,447,111; 8,447,144; 8,489,624; 8,505,090; 8,515,816; 8,600,196; 8,619,147; 8,619,287; 8,620,083; 8,620,760; and 8,621,349).

60. Google was aware (or willfully blind) at least by 2010 that mobile devices including Accused Smartphones and/or Accused Tablets incorporating Google's Android OS directly infringed the '304 patent because, among other things, DataQuill's January 13, 2010 letter notified Google that such systems infringed the '304 patent, or Google was willfully blind about that fact. The letter directed Google to review the '304 patent including its original dependent claims 18 and 21 as depending from claim 2 with respect to Google's Nexus One smartphone which incorporated a touchscreen and Android OS.

61. Claim 101 of the reexamined '304 patent (*see supra* paragraphs 35-49) is the '304 patent's original dependent claim 21 rewritten in independent form as depending from claim 2.

| '304 patent (original) | '304 patent (reexamined) |
|---|---|
| 2. A data entry device for use in a data entry System, said data entry device comprising: | 101. A data entry device for use in a data entry system, said data entry device comprising: |

| | |
|---|---|
| a reading Sensor responsive to commands and/or Sensed commands and data to produce input signals, | a reading sensor responsive to commands and/or sensed commands and data to produce input signals, |
| a controller coupled to said reading sensor to receive and process said input signals, | a controller coupled to said reading sensor to receive and processs said input signals, |
| said controller coupled to a communications interface to selectively control transmission over said communications interface of command and/or data signals as determined by said input signals processed by said controller; | said controller coupled to a communications interface to selectively control transmission over said communications interface of command and/or data signals as determined by said input signals processed by said controller, |
| said communications interface being operable directly to connect Said data entry device to a wireless telecommunications network, and | said communications interface being operable directly to connect said data entry to a wireless telecommunications network, and |
| a display coupled to Said controller to display commands and/or information under control of Said input signals processed by said controller; | a display coupled to said controller to display commands and/or information under control of said input signals processed by said controller, |
| wherein said reading sensor, controller and display comprise a unitary assembly and said communications interface is a cellular telephone network interface and said wireless telecommunications network is a cellular telephone network and Said data entry device is integral with a cellular telephone, and | wherein said reading sensor; controller and display comprise a unitary assembly and said communications interface is a cellular telephone network interface and said wireless telecommunications network is a cellular telephone network and said data entry device is integral with a cellular telephone, and |
| wherein said controller is responsive to a said command to cause downloading of information from a remote processing center as required for updating information previously stored in said data entry device. | wherein said controller is responsive to a said command to cause downloading of information from a remote processing center as required for updating information previously stored in said data entry device, |
| 21. A data entry device according to any of claims 1, 2 or 3, | |
| [and] comprising a carrier or a display for a plurality of data and/or command codes for association with means for displaying a plurality of selectable items, | and comprising a carrier or a display for a plurality of data and/or command codes for association with means for displaying a plurality of selectable items, |
| wherein said carrier carries a plurality of codes, each for a respective one of a plurality of natural language and/or numeric characters and a plurality of commands for controlling operation of said data entry device or a merchandising system, each code being associated with a visual representation of the corresponding natural language or numeric character or command and/or of a graphical representation thereof, wherein said codes are bar and/or dot codes and/or other product identifications. | wherein said carrier carries a plurality of codes, each for a respective one of a plurality of natural language and/or numeric characters and a plurality of commands for controlling operation of said data entry device or a merchandising system, each code being associated with a visual representation of the corresponding natural language or numeric character or command and/or of a graphical representation thereof, wherein said codes are bar and/or dot codes and/or other product identifications. |

62. Additionally, DataQuill's 2010 letter to Google also informed Google that "LG Electronics, Motorola, Inc. [and] Samsung Electronics Co., Ltd." had "settled and entered into licenses" with DataQuill. Ex. B at 2. Google thereby was aware (or willfully blind) that third-party smartphone and tablet manufacturers (*e.g.*, LGE, Motorola, and Samsung) who were licensees of Android OS and produced smartphones and tablets incorporating Android OS, also infringed the '304 patent.

63. Google was aware (or willfully blind) that insofar as LGE, Motorola, and Samsung Android phones and tablets infringed the '304 patent, and Google's own smartphone infringed the '304 patent, that other third-party manufacturers' Accused Smartphones and/or Accused Tablets incorporating Android OS also infringed the '304 patent.

64. While knowing (or being willfully blind) that third-party Accused Smartphones and/or Accused Tablets incorporating Android OS infringed the Patent-in-Suit, Google continued to induce third-party smartphone and tablet manufacturers to infringe the '304 patent by licensing, selling, and/or providing Android OS and other support materials and services (*see, e.g.,* Ex. C, Attach. 1-2) to third-party smartphone manufacturers besides LGE, Motorola, and Samsung, and by advertising Android OS (*see, e.g.,* Ex. C, Attach. 3-4).

65. On information and belief, Google induced third-party companies to infringe the Patent-in-Suit including without limitation Toshiba, Panasonic, Casio, Dell, and Lenovo. DataQuill reserves the right to discover and pursue all such additional induced sales by third-party manufacturers.

66. Despite Google's awareness of the Patent-in-Suit, Google has continued these acts of inducement with specific intent to cause and encourage direct infringement of the Patent-in-Suit or with willful blindness that such activities occurred and constitute direct infringement

of the Patent-in-Suit. Google had a financial interest in third-party smartphone and/or tablet manufacturers installing Android OS on their Accused Smartphones and/or Accused Tablets because Google derived revenue including without limitation from advertising on Android smartphones and tablets and from purchases through the Google Play app store. As a result, "The Play Store app comes installed on Android devices that support Google Play." Ex. C, Attach. 9.

67. Google is thus liable for infringement of the '304 Patent under 35 U.S.C. § 271(b).

68. Google indirectly infringed claims of the Patent-in-Suit in this judicial district and elsewhere in the United States by, among other things, contributing to the direct infringement by others including, without limitation, third-party mobile device manufacturers that made, used, offered for sale, sold and/or imported, in this District and elsewhere in the United States, Accused Smartphones and/or Accused Tablets; and advertising features of Android OS that are used, and benefits that are achieved through use of the Patent-in-Suit.

69. Google contributed to this direct infringement by making, offering to sell, selling and/or importing into the United States, a component of a patented machine, or manufacture or combination, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '304 Patent and not staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, Ex. C, Attach. 1 to 2. For example, the Google Play app for Android OS is a component of a patented machine, manufacture, or combination. *See* Ex. C, Attach. 1-2 (stating Google requires OEM Android manufacturers to install Google Play); Ex. C, Attach. 9 ("The Play Store app comes installed on Android devices that support Google Play."). Furthermore, the Google Play app for Android OS

16

is a material part of the claimed inventions and upon information and belief not a staple article or commodity of commerce suitable for substantial non-infringing use.

70. Google will have been on notice of the '304 Patent since receiving a notice letter in January 2010 and will have known and intended or will have been willfully blind (at least since receiving such notice) that Google's continued actions would actively contribute to infringing the '304 Patent's claims.

71. Google will also have been on notice of the '304 Patent because of DataQuill's litigation against major manufacturers of Android smartphones and tablets including HTC, Huawei, TCL, and ZTE and including the jury verdict against ZTE, and Google will have known and intended or will have been willfully blind that Google's continued actions would actively contribute to infringing the '304 Patent's claims.

72. Google may have infringed the '304 Patent through other software utilizing the same or reasonably similar functionality, including other versions of the Google Play app system. DataQuill reserves the right to discover and pursue all such additional infringing software/devices.

73. Google is thus liable for infringement of the '304 Patent under 35 U.S.C. § 271(c).

74. As a result of its infringement of the '304 Patent, Google has damaged DataQuill. Google is liable to DataQuill in an amount to be determined at trial that adequately compensates DataQuill for the infringement, which by law can be no less than a reasonable royalty.

75. Because Google knew of the '304 Patent and its infringement thereof (as detailed above), Google's infringement of the '304 Patent is therefore willful and deliberate, entitling DataQuill to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred

in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

DataQuill demands a trial by jury on all issues that may be so tried.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff DataQuill requests that this Court enter judgment in its favor and against Defendants Google LLC and Alphabet, Inc. as follows:

A. Adjudging, finding, and declaring that Google has infringed the Patent-in-Suit under 35 U.S.C. § 271;

B. Awarding the past damages arising out of Google's infringement of the Patent-in-Suit to DataQuill in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Google's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D. Adjudging, finding, and declaring that the Patent-in-Suit is valid and enforceable;

E. Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F. Granting DataQuill such other further relief as is just and proper, or as the Court deems appropriate.

| | |
|---|---|
| Dated: October 8, 2021 | Respectfully submitted, |
| Of Counsel: | FARNAN LLP |
| David P. Berten<br>Alison Aubry Richards<br>Michael Ajay Chandra<br>Global IP Law Group, LLC<br>55 W. Monroe St., Ste. 3400<br>Chicago, Illinois 60603<br>(312) 241-1500<br>dberten@giplg.com<br>arichards@giplg.com<br>jchandra@giplg.com | /s/ Michael J. Farnan<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 N. Market St., 12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>*Attorneys for Plaintiff DataQuill Limited* |