IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DATAQUILL LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1438 (MN) |
| | ) | |
| GOOGLE LLC and ALPHABET INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS GOOGLE LLC'S AND ALPHABET INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF DATAQUILL LIMITED'S <u>FIRST AMENDED COMPLAINT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

Michael A. Berta
Ryan J. Casamiquela
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111
(415) 471-3100

*Attorneys for Defendants Google LLC and Alphabet Inc.*

Nicholas Lee
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844
(213) 243.4156

February 28, 2022

**TABLE OF CONTENTS**

**Page**

I.      Nature and Stage of the Proceedings ................................................................... 1

II.     Summary of Argument ......................................................................................... 1

III.    Statement of Facts................................................................................................ 3

        A.      The '304 Patent............................................................................................. 3

        B.      Allegations of Pre-Suit Knowledge of the '304 Patent in the FAC ......................... 3

IV.     Legal Standard ..................................................................................................... 5

V.      Argument ............................................................................................................. 6

        A.      The FAC Fails to Allege Google had Pre-Expiration Knowledge of the Asserted
                Patent or of Patent Infringement ................................................................ 6

                1.      The January 2010 Letter Was Not Sufficient to Provide Knowledge of
                        the '304 Patent or Google's Alleged Infringement..................................... 6

                2.      The Remaining Allegations Fail to Show That Google Was Aware
                        of the '304 Patent, Let Alone Patent Infringement Prior to the Filing of
                        this Litigation .......................................................................... 10

        B.      The FAC Fails to State Any Claim Against Alphabet Inc................................... 12

VI.     Conclusion ......................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................6

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
    605 F.3d 1305 (Fed. Cir. 2010)...............................................................................8

*BlackBerry Ltd. v. Nokia Corp.,*
    No. 17-CV-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) .......................13

*Commil USA, LLC v. Cisco Sys., Inc.,*
    575 U.S. 632 (2015).................................................................................................6

*DermaFocus LLC v. Ulthera, Inc.,*
    201 F. Supp. 3d 465 (D. Del. 2016).......................................................................11

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.,*
    No. CV 18-098 (MN), 2019 WL 3069773 (D. Del. July 12, 2019) .........................6

*Dynamic Data Techs. v. Google LLC,*
    No. CV 19-1529-CFC, 2020 WL 1285852 (D. Del. Mar. 18, 2020)..................9, 10, 11, 12, 13

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009).....................................................................................6

*IpLearn LLC v. K12 Inc.,*
    No. CV 11-1026-RGA, 2012 WL 10874084 (D. Del. July 2, 2012)......................11

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
    869 F.3d 1372 (Fed. Cir. 2017).................................................................................5

*MONEC Holding AG v. Motorola Mobility, Inc.,*
    897 F. Supp. 2d 225 (D. Del. 2012)..........................................................................7

*Princeton Digital Image Corp. v. Ubisoft Ent. SA,*
    No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016) ........................12

*United States v. Bestfoods,*
    524 U.S. 51 (1998)..................................................................................................13

*VLSI Tech. LLC v. Intel Corp.,*
    No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) ................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................5

## I.   NATURE AND STAGE OF THE PROCEEDINGS

DataQuill Limited ("DataQuill") filed its original complaint on October 8, 2021 against Google LLC and Alphabet Inc. (collectively, "Google") alleging that Google directly and indirectly infringed various claims of U.S. Patent No. 6,058,304 (the "'304 patent"), and that Google's infringement was willful. (D.I. 1.). DataQuill filed its First Amended Complaint ("FAC") on November 9, 2021. (D.I. 7.)

## II.   SUMMARY OF ARGUMENT

DataQuill's litigation campaign involving the '304 patent dates back to 2001 and spans over 15 cases. The '304 patent, which issued on May 23, 2000, saw the vast majority of its original claims, including all independent claims, cancelled through reexamination proceedings that concluded more than a decade ago on April 13, 2010. The '304 patent then expired nearly five years ago on May 7, 2017. Because the patent is expired, DataQuill is only eligible to seek past damages. Here, DataQuill is relying on the reexamination claims to seek damages from Google for the 18-month window from October 2015 (6 years prior to filing suit) to May 2017 (when the patent expired). DataQuill's FAC has claims for willfulness and direct and indirect infringement for this 18-month period.

DataQuill's claims of pre-expiration indirect infringement and pre-expiration willfulness should be dismissed because indirect infringement and willfulness require knowledge of infringement, and DataQuill has not sufficiently pleaded and cannot show such knowledge. DataQuill's FAC does not plead that Google had actual pre-expiration knowledge of the reexamined version of the '304 patent and pre-expiration knowledge of alleged infringement. Instead, to fill the gap, DataQuill relies on a letter from DataQuill to Google from twelve years ago—before the '304 patent was reexamined—that merely identified, but did not claim

1

infringement regarding (1) patent claims that were later cancelled during reexamination proceedings and (2) Google products that were long discontinued before the damages window in this matter. As DataQuill admits through its silence, Google never heard from DataQuill again until long after expiration. If anything, DataQuill's conduct evidences notice of *non*-infringement, and not the type of pre-suit knowledge necessary to sustain a claim of damages or willfulness more than a decade after an obviated letter on cancelled claims and out-of-date products.

Perhaps to compensate for the insufficiency of its letter, DataQuill also relies upon circumstantial theories of pre-suit knowledge, none of which provide an adequate legal basis to sustain a charge that Google actually had pre-expiration knowledge of the '304 patent or any alleged infringement. DataQuill's theories include ordinary prosecution activities of third-parties (*i.e.*, not Google) who cited to the '304 patent and prosecution activities of Google who cited to other patents related to the '304 patent (*i.e.*, not the '304 patent); and supposed industry knowledge of litigation settlements and a judgment against third-parties that DataQuill sued over the course of its litigation campaign  Whether taken individually or collectively, these types of pleading allegations are routinely found inadequate by judges in this District. Accordingly, DataQuill should not be entitled to claim indirect infringement or willfulness for any conduct in the 18-month damages window.

Additionally, DataQuill's claims against Alphabet Inc. should be dismissed in their entirety because the FAC does not allege any actions performed by Alphabet Inc. that could plausibly give rise to infringement liability.

III.     **STATEMENT OF FACTS**

A.      **The '304 Patent**

The '304 patent entitled "Data Entry System" issued on May 2, 2000. (D.I. 7-1 at 2.) The first *ex parte* reexamination, Patent Reexamination Application No. 90/008,340 ("First Reexamination"), was initiated on January 25, 2007. (D.I. 7-1 at 32.) The PTO issued a certificate of reexamination on April 13, 2010. (D.I. 7-1 at 32.) As a result of the First Reexamination, claims 1-5, 10, 11, 14-19, 21, 24-31, 36-38, 43, 48-51 were cancelled, and new claims 64-118 were added. (D.I. 7-1 at 45.) Notably, the First Reexamination resulted in the cancellation of all the original independent claims of the '304 patent. On March 2, 2021, the PTO initiated a second reexamination proceeding, Patent Reexamination Application No. 90/014,654 ("Second Reexamination"), which is still pending. Ex.[1] A at 1-26.[2]

B.      **Allegations of Pre-Suit Knowledge of the '304 Patent in the FAC**

DataQuill alleges that Google is liable for inducing infringement and contributing to the direct infringement of the '304 patent, and that Google's alleged infringement was willful because Google knew of or was willfully blind to the existence of the '304 patent and its alleged infringement since January 13, 2010. (D.I. 7 at ¶¶ 23-33, 116-129.) As part of that allegation, the FAC contends that Google had knowledge of the '304 patent and its alleged infringement based on a January 13, 2010 letter sent by DataQuill's counsel to Google Inc.'s Vice President and General Counsel Kent Walker ("January 2010 Letter") while the First Reexamination was pending.

---

[1] "Ex." refers to exhibits attached to the Declaration of Nicholas Lee in Support of Defendants Google LLC's and Alphabet Inc.'s Motion to Dismiss Plaintiff DataQuill Limited's First Amended Complaint, filed concurrently herewith.

[2] The Second Reexamination implicates approximately one-third of the asserted claims in this matter, some of which have been found patentable, and the art at issue in the Second Reexamination is expected to be relevant to many more of the asserted claims. *See* Ex. A.

(D.I. 7 at ¶ 108.) The January 2010 Letter enclosed a copy of the original version of the '304 patent

and included the following statements:

> It has come to our attention that Google has manufactured, offers for sale
> and/or sells, etc. systems and devices including its Nexus One line of mobile phone
> devices with Android OS. You may wish to have your patent counsel examine the
> claims of the referenced patents relative to Google's devices and systems to
> determine whether a non-exclusive license or appropriate covenant not to sue is
> needed. See, for example only, '304 patent e.g. dependent claims 18, 21 (as
> depending e.g. from claim 2); also '591 patent, e.g. claims 3, 32, 47 (as set forth in
> the '591 reexamination certificate), '785 patent, claims 1, 17, and '255 application,
> e.g., claims 65, 94, 97.

(D.I. 7-2 at 4.) The January 2010 Letter does not actually claim infringement or set forth any basis

for infringement. And, the identified claims of the '304 patent in the January 2010 Letter were

cancelled several months later in the First Reexamination. Nevertheless, based on this letter alone,

the FAC concludes that "Google was aware (or willfully blind) at least by 2010 that mobile devices

including Accused Smartphones and/or Accused Tablets incorporating Google's Android OS

directly infringed the '304 patent because, among other things, DataQuill's January 13, 2010 letter

notified Google that such systems infringed the '304 patent, or Google was willfully blind about

that fact." (D.I. 7 at ¶ 113.)

The FAC also alleges circumstantial facts for its contention that Google allegedly had pre-

suit knowledge of or was willfully blind to the existence of the '304 patent. The FAC contends

that Google was aware of the '304 patent because "dozens of Google patents cite DataQuill's [U.S.

Patent No. 7, 505,785]" which "is a continuation of the '304 patent and shares the same

specification." (D.I. 7 at ¶ 112.) The FAC also alleges that "Google was aware of the '304 patent

because its subsidiary Google Technology Holdings LLC is the assignee of U.S. Patent No.

6,393,079, which cites the '304 patent." *Id.* at ¶ 109. But, U.S. Patent No. 6,393,079 was

prosecuted by third-party Motorola, Inc. and only assigned to Google Technology Holdings LLC

on November 20, 2014, well after both the issuance of that patent as well as the conclusion of the

First Reexamination that cancelled the vast majority of the original '304 patent claims. Ex. B.

The FAC then alleges that "Google was aware (or willfully blind) that third-party

smartphone and tablet manufacturers . . . who were licensees of Android OS . . . also infringed the

'304 patent" because the January 2010 Letter "informed" Google that certain Google licensees had

obtained licenses to the '304 patent from DataQuill. (D.I. 7 at ¶ 115.)

Finally, the FAC alleges Google somehow had actual knowledge of the '304 patent and

infringement thereof because of general smartphone/tablet industry knowledge, including

"because over 100 U.S. patents that issued after April 2010 have cited the '304 patent as prior art"

(*id*. at ¶¶ 109-110), and "because of DataQuill's litigation against major manufacturers of Android

smartphones and tablets . . . and including the jury verdict against ZTE" (*id.* at ¶ 125).

## IV.    LEGAL STANDARD

A claim of indirect infringement must comply with the heightened *Iqbal*/*Twombly* pleading

standard. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) ("[T]he

*Iqbal / Twombly* standard unquestionably applies to . . . allegations of induced and contributory

infringement.") (citations omitted). Courts in the Third Circuit conduct a two-part analysis when

faced with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009)).

V.     **ARGUMENT**

A.     **The FAC Fails to Allege Google had Pre-Expiration Knowledge of the Asserted Patent or of Patent Infringement**

Both induced and contributory patent infringement require knowledge of the asserted patent **and** knowledge of alleged patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). To adequately plead pre-suit indirect patent infringement, a plaintiff must allege that the defendant had not only pre-suit knowledge of the asserted patent, but also knowledge of its infringement. *See, e.g., DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2019 WL 3069773, at *2 (D. Del. July 12, 2019) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2014)). Similarly, for a claim for enhanced damages for willful infringement, a plaintiff must plausibly allege that the defendant knew of the asserted patent and knew or should have known its conduct infringed the asserted patent. *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019). As discussed below, DataQuill's FAC fails to plausibly allege either pre-suit knowledge of the Asserted Patent or of infringement, and therefore, DataQuill's claims of pre-suit indirect infringement and pre-suit willfulness should be dismissed.

1.     **The January 2010 Letter Was Not Sufficient to Provide Knowledge of the '304 Patent or Google's Alleged Infringement**

The crux of DataQuill's case against Google hinges on its January 2010 Letter. That letter, however, does not provide a plausible basis to sustain DataQuill's pre-suit infringement allegations. As discussed below, the letter (1) does not provide sufficient notice of the claims of the '304 patent actually in force during the damages window; (2) does not identify any products that were actually being sold during the damages window for which DataQuill is seeking damages; and (3), does not actually make any claim of supposed patent infringement.

First, the January 2010 Letter only references claims that were subsequently cancelled

during the First Reexamination, *i.e.*, claims 2, 18 and 21. In fact, in addition to the claims identified

in the January 2010 Letter, the vast majority of the original '304 patent claims, including all of the

original independent claims, were cancelled during the First Reexamination. (*See* D.I. 7-2 at 4

(referencing claims 18 and 21 which depended from claim 2); D.I. 7-1 at 45 ("AS A RESULT OF

REEXAMINATION IT HAS BEEN DETERMINED THAT: Claims 1-5, . . ., 14-19, 21 . . . are

cancelled.").) The letter, which was sent while the First Reexamination was pending, even included

a copy of the '304 patent with the original claims prior to the issuance of the certificate of

reexamination. (D.I. 7-2; D.I. 7-1 at 32.) Because the First Reexamination cancelled the claims

identified in the January 2010 Letter, the letter could not stand as notice of a newly-reexamined

'304 patent and its newly-issued claims that DataQuill now contends are infringed in the FAC.[3]

*See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012)

("Assuming that MONEC has sufficiently pled Defendants' actual knowledge of the original '678

patent, MONEC asks the court to equate such knowledge with actual knowledge of the reexamined

'678 patent, without adequately pleading their connection. According to MONEC, notice of the

'678 patent litigation should have motivated each Defendant to continue tracking its further

activity through reexamination. MONEC cites no authority for imposing a duty on Defendants to

indefinitely track a particular patent in anticipation of a potential infringement lawsuit. . . . Such

speculation falls short of a plausible argument for equating knowledge of the '678 patent with

actual knowledge of the patent-in-suit, the reexamined '678 patent.") (citations omitted). More

---

[3] In the FAC, DataQuill appears to allege that a combination of original claims of the '304 patent identified in the January 2010 Letter map to certain newly-issued post-reexamination claims, but this is irrelevant where it is undisputed that DataQuill cancelled the identified original claims and was silent thereafter during the life of the patent. In any event, this does not solve the fact that DataQuill never alleges infringement of any original or reexamined claims, as discussed in more detail below.

importantly, DataQuill does not, because it cannot, allege that it ever provided follow-up notice to Google of the newly-reexamined '304 patent or any claimed infringement thereof. The intervening cancellation of the First Reexamination between the January 2010 Letter and the filing of the Complaint over a decade later, without more, actually demonstrates Google's good faith belief of non-infringement of the '304 patent.[4]  Accordingly, the January 2010 Letter did not and could not provide Google pre-suit knowledge of the reexamined patent or of its infringement.

Second, the January 2010 Letter does not identify any product that has actually been put at issue in the FAC (i.e., Nexus 6, Nexus 5X, Nexus 6P, Pixel, Pixel XL). Rather, the January 2010 Letter states that DataQuill is aware that Google has manufactured "systems and devices including its Nexus One line of mobile phone devices with Android OS." (D.I. 7-2 at 4.) The letter does not specifically state whether the product at issue is the NexusOne, Android OS, or another Google product.[5] Consequently, the January 2010 Letter did not provide notice of what specifically was supposed to be at issue in 2010, let alone provide notice regarding any of the products that DataQuill is now trying to put at issue in 2021.

Finally, and also dispositively, the January 2010 Letter does not actually make any claim of infringement or provide any explanation of how or why any Google products are of interest in

---

[4] After the January 2010 Letter, Google never heard from DataQuill again, until the filing of the Complaint on October 8, 2021. As will also be at issue in this case, equitable estoppel thus also bars any recovery. *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310-12 (Fed. Cir. 2010) (granting motion for summary judgment in favor of defendant and dismissing the case on equitable estoppel grounds where there were two exchanges via correspondence between the parties implicating the patent at issue, but those exchanges were separated by three years of silence and another seven months following the conclusion of the second exchange).

[5] The Nexus One line was discontinued later in 2010, well before the damages window of this litigation, i.e., October 8, 2015 to May 23, 2016. *See* Ex. C ("This week we received our last shipment of Nexus One phones. Once we sell these devices, the Nexus One will no longer be available online from Google. Customer support will still be available for current Nexus One customers. And Nexus One will continue to be sold by partners including Vodafone in Europe, KT in Korea, and possibly others based on local market conditions.").

connection with the (old) claims of the '304 patent. Instead, the letter states that Google "may wish to have [its] patent counsel examine the claims of the referenced patents relative to Google's devices and systems to determine whether a non-exclusive license or appropriate covenant not to sue is needed." (D.I. 7-2 at 4.) It does not provide any explanation of how the Nexus One, let alone any other Google product, infringes any claim of the '304 patent.

In *Dynamic Data Techs. v. Google LLC*, Judge Connolly rejected a similar letter in dismissing pre-suit infringement allegations from a complaint. *See* No. CV 19-1529-CFC, 2020 WL 1285852, at *1-2 (D. Del. Mar. 18, 2020), *report and recommendation adopted*, No. CV 19-1529-CFC, 2020 WL 3103786 (D. Del. June 11, 2020). There, the plaintiff sent a pre-suit letter to Google that identified multiple patents including the asserted patents, conclusorily stated that Google infringed some of the patents, and requested a mutually-acceptable license agreement. *Id.* at *2. The court dismissed plaintiff's claims for pre-suit indirect infringement and willful infringement because even where knowledge of the patents-in-suit is assumed through the letter, "the Complaint [did] not contain plausible allegations that Google would then have known that *it was infringing* each of the patents-in-suit." *Id.* (emphasis original). More particularly, the court found that the conclusory statements in the notice letter "did not allege that Google infringed any of the patents-in-suit, let alone explain why it is that the accused Google products at issue [in the complaint] . . . infringed those particular patents." *Id.* Here, at best, the January 2010 Letter might establish Google's knowledge of original '304 patent, not of the reexamined version of the '304 patent. And, even less than in *Dynamic Data*, the letter here does not even actually make a claim of infringement, much less provide any details or explanation as to why the accused Nexus 6, Nexus 5X, Nexus 6P, Pixel, Pixel XL infringes any of the later-issued claims of the reexamined patent.

Accordingly, the January 2010 Letter failed to identify any non-cancelled claims or any non-discontinued products, let alone provide any explanation on how Google products infringed the claims of the '304 patent. Dismissal of DataQuill's pre-suit indirect and willful infringement allegations is thus appropriate.

> **2.**      **The Remaining Allegations Fail to Show That Google Was Aware of the '304 Patent, Let Alone Patent Infringement Prior to the Filing of this Litigation**

Given the insufficiency of the January 2010 Letter, DataQuill throws in a kitchen-sink of circumstantial allegations in an effort to allege pre-suit knowledge. But none of these allegations, individually or taken together, is sufficient to sustain its indirect infringement or willfulness claims.

In particular, DataQuill highlights various flavors of prosecution and industry activities related to, or directly citing to, the '304 patent, under a theory that such activities somehow illustrate Google's actual pre-suit knowledge of the Asserted Patent and of its infringement. As an initial matter, DataQuill never alleges that Google itself has ever directly cited to the '304 patent. Instead, DataQuill only points to Google's citation to related patents in the same family as the '304 patent. (D.I. 7 at ¶ 112.) *See IpLearn LLC v. K12 Inc.*, No. CV 11-1026-RGA, 2012 WL 10874084, at *1-*2 (D. Del. July 2, 2012) (granting motion to dismiss indirect infringement claims where plaintiff pled that defendant knew or should have known of the asserted patent prior to filing of the litigation since defendant cited plaintiff's patents "directly related to the [patent-in-suit], and which share identical or identical-in-part specifications with the [patent-in-suit]" during prosecution of its own patent applications because the Court found the complaint "[did] not make an allegation of actual knowledge plausible").

Because of this defect, DataQuill alternatively looks to the prosecution activities of third parties that have cited to the '304 patent for purposes of establishing the requisite pre-suit

knowledge. For example, DataQuill contends that Google somehow had pre-suit knowledge of the Asserted Patent in view of: (1) a patent originally prosecuted by third-party Motorola Inc. that cited the '304 patent and which was eventually assigned to a third-party Google subsidiary (Google Technology Holdings, Inc.) (D.I. 7 at ¶ 109); and (2) other prosecuting entities in the smartphone industry who have cited the '304 patent as prior art (*id.* at ¶ 110). Courts in this District make clear, however, that none of these activities, individually or collectively, is sufficient to show Google had the requisite pre-suit knowledge of the asserted patent or of its infringement. *See Dynamic Data*, 2020 WL 1285852, at *1-2 (finding no pre-suit knowledge of patent infringement, despite allegations of a notice letter, prosecution activity citing the asserted patent's underlying application, and other allegations of industry knowledge); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016) (finding citation to the asserted patent during prosecution of defendant's own patent was not sufficient to show the defendant knew of the asserted patent before the filing of the complaint even when the asserted patent was one of only seven references cited); *Princeton Digital Image Corp. v. Ubisoft Ent. SA*, No. 13-335-LPS-CJB, 2016 WL 6594076, *7-*9 (D. Del. Nov. 4, 2016), *report and recommendation adopted*, No. 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017) (finding that citations to the asserted patent during prosecution of defendant's patent application was insufficient to show the defendant had pre-suit knowledge of the asserted patent).

The same result follows with respect to DataQuill's remaining allegations related to its enforcement efforts of the '304 patent. As alleged proof of Google's pre-suit knowledge of the '304 patent, DataQuill highlights a jury verdict it obtained against a smartphone manufacturer (ZTE) for infringement of the '304 patent (D.I. 7 at ¶¶ 111, 125) as well as settlement-related licenses to the '304 patent with other third-party manufacturers (e.g., LG, Motorola, and Samsung)

11

that use Google's Android Operating System (*id.* at ¶¶ 113-15). Yet, judges in this District routinely reject circumstantial, constructive, and theoretical allegations of pre-suit knowledge as a substitute for the actual knowledge required for purposes of sustaining allegations of indirect and willful infringement before the filing of the complaint. *See, e.g., Dynamic Data*, 2020 WL 1285852, at *2 (explaining that defendant's patent prosecution activities and the fact various other entities in the same industry obtained licenses to the asserted patents were insufficient to show knowledge of the asserted patent); *Princeton Digital Image*, 2016 WL 6594076, at *6-*7 (finding the defendants did not have pre-suit knowledge of the asserted patent because the plaintiff's allegations were "is too tenuous to permit the reasonable inference that Defendants had actual knowledge of the [asserted patent]").

*     *     *

All in all, the FAC does not state a claim for pre-suit indirect infringement or pre-suit willfulness because it fails to adequately plead that Google had pre-suit knowledge of the reexamined '304 Patent or pre-suit knowledge of patent infringement.

### B.     The FAC Fails to State Any Claim Against Alphabet Inc.

Nowhere in the FAC is there any allegations that Alphabet Inc. performs any act related to the alleged infringement. This is because Alphabet Inc. is merely a parent holding company that does not engage in the any of the complained acts of infringement set forth in the FAC. Ex. D at 4. Indeed, Dataquill does not (and cannot) allege that Alphabet makes, uses, offers to sell, or sells any of the accused products or that it imports into the United States any accused products. Moreover, DataQuill has not (and cannot) plead any facts that show the existence of any agency relationship between Alphabet Inc. and Google LLC or that justify piercing the corporate veil. *See BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155-RGA, 2018 WL 1401330, at *2, *4 (D. Del. Mar.

12

20, 2018) (dismissing claims against parent holding companies because plaintiff's claims were based on the relationship between the parent holding company and its wholly owned subsidiary and the complaint did not plead facts sufficient to show an agency relationship or to justify corporate veil piercing); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."). As such, the Court should dismiss all claims against Alphabet Inc.[6]

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss DataQuill's claims of indirect infringement and willfulness before the filing of this litigation. Google also requests that this Court dismiss claims against Alphabet Inc.

| OF COUNSEL: | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| | */s/ Brian P. Egan* |
| Michael A. Berta | |
| Ryan J. Casamiquela | |
| ARNOLD & PORTER KAYE SCHOLER LLP | Jack B. Blumenfeld (#1014) |
| Three Embarcadero Center, 7th Floor | Brian P. Egan (#6227) |
| San Francisco, CA  94111 | 1201 North Market Street |
| (415) 471-3100 | P.O. Box 1347 |
| | Wilmington, DE  19899 |
| Nicholas Lee | (302) 658-9200 |
| ARNOLD & PORTER KAYE SCHOLER LLP | jblumenfeld@morrisnichols.com |
| 777 South Figueroa Street, 44th Floor | began@morrisnichols.com |
| Los Angeles, CA  90017-5844 | |
| (213) 243.4156 | *Attorneys for Defendants* |
| February 28, 2022 | |

---

[6] With respect to the claims for indirect and willful infringement, even if Google LLC had pre-suit knowledge of the asserted patent or its infringement, which it does not, such knowledge should not be imputed to Alphabet Inc. *See Dynamic Data*, 2020 WL 1285852, *3 ("Though Plaintiff notes in its letter brief that YouTube is a 'subsidiary of Google[,]' it provides no factual basis in its brief (or, more importantly, in the Complaint), for the conclusion that Google's knowledge should be imputed to YouTube. For that reason alone, the Court recommends that the Motion be granted as to the claims at issue against YouTube.") (citations omitted).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2022, I caused the foregoing to be electronically filed

with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on February

28, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| David P. Berten, Esquire<br>Alison Aubry Richards, Esquire<br>Michael Ajay Chandra<br>Global IP Law Group, LLC<br>55 West Monroe Street, Suite 3400<br>Chicago, IL  60603<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

Brian P. Egan (#6227)