13:12:40

```
                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE


    DATAQUILL LIMITED,         )
                               )
           Plaintiff,          )
                               ) C.A. No. 21-1438(MN)
    v.                         )
                               )
    GOOGLE LLC, et al.,        )
                               )
           Defendants.         )



                       Thursday, May 26, 2022
                       2:00 p.m.
                       Teleconference


                       844 King Street
                       Wilmington, Delaware



    BEFORE:  THE HONORABLE MARYELLEN NOREIKA
             United States District Court Judge




    APPEARANCES:


             FARNAN LLP
             BY:  MICHAEL J. FARNAN, ESQ.

             -and-

             GLOBAL IP LAW GROUP
             BY:  ALISON A. RICHARDS, ESQ.
             BY:  DAVID BERTEN, ESQ.


                       Counsel for the Plaintiffs
```

1   APPEARANCES CONTINUED:

2
          MORRIS NICHOLS ARSHT & TUNNELL LLP
3         BY:  BRIAN P. EGAN, ESQ.

4         -and-

5         ARNOLD & PORTER
          BY:  MICHAEL A. BERTA, ESQ.
6         BY:  NICHOLAS LEE, ESQ.

7                    Counsel for the Defendants

8

9                    - - - - - - - - - - -

13:51:34  10

14:00:05  11         THE COURT:  Good afternoon, counsel.  Who is
14:00:09  12   there, please?
14:04:20  13         MR. FARNAN:  Good afternoon, Your Honor.  This
14:04:21  14   is Michael Farnan for the plaintiff.  And with me on the
14:04:23  15   line are David Berten and Alison Richards from Global IP Law
14:04:29  16   Group.  And Ms. Richards will handle the argument this
14:04:32  17   afternoon.
14:04:33  18         THE COURT:  All right.  Thank you.  Good
14:04:35  19   afternoon to all of you.
14:04:37  20         MR. EGAN:  Good afternoon, Your Honor.  This is
14:04:39  21   Brian Egan from Morris Nichols on behalf of the Google
14:04:42  22   defendants.  Joining me today are Michael Berta and Nicholas
14:04:48  23   Lee from Arnold & Porter as well as Howard Chen who is
14:04:52  24   in-house litigation counsel for Google.
14:04:56  25         THE COURT:  All right.  Good afternoon to all of

```
14:04:57  1    you as well.
14:04:58  2                So we have the motion to dismiss the indirect
14:05:04  3    infringement claims and the willfulness allegations.  The
14:05:12  4    direct infringement is going to go forward regardless;
14:05:16  5    right, Mr. Egan, or someone else?
14:05:24  6                MR. BERTA:  This is Mike Berta.  Yes, Your
14:05:29  7    Honor, indirect infringement will go forward.
14:05:38  8                THE COURT:  So I guess when I look at the
14:05:42  9    claims, I'm trying to figure out where indirect infringement
14:05:45 10    comes into play here because it looks like there is device
14:05:50 11    claims and so I'm just trying to understand kind of where we
14:05:57 12    are in this case and what the relevance of this is.
14:06:06 13                MR. BERTA:  If I can address -- sorry, I
14:06:08 14    apologize, Your Honor.
14:06:09 15                THE COURT:  Go ahead.
14:06:10 16                MR. BERTA:  This is Mike Berta.
14:06:12 17                For us, the reason we filed our motion, and
14:06:14 18    where this case begins is as you know the patent expired a
14:06:19 19    long time ago.  There is a relatively limited damages window
14:06:23 20    and there are as I understand it two buckets of potential
14:06:27 21    liability.  First, there is direct infringement, as you say.
14:06:31 22    There are some phones that Google bought from a supplier and
14:06:34 23    then we sold as Google branded phones.  There is a claim
14:06:37 24    that that is a direct infringement.  There is a license
14:06:40 25    issue with respect to those phones which was the assets and
```

14:06:45  1   we think it might be helpful to talk to the Court at some
14:06:47  2   point about the issue of whether those phones are licensed
14:06:50  3   because that potentially could resolve or not resolve that
14:06:53  4   issue.
14:06:53  5                  And then the other bucket, bucket two of two is
14:06:56  6   a claim, and I think it's in the claim at around
14:06:59  7   paragraph 115 or so, where they say that by the fact that
14:07:03  8   random manufacturers of phones use Android and offer Google
14:07:09  9   Play, that is indirect infringement by Google, either
14:07:13 10   inducement or contributory infringement by the fact that
14:07:18 11   Google having had Android or having had Google Play, other
14:07:22 12   random phone manufacturers, that's the accusation is that
14:07:26 13   that's the direct infringement for this limited time period.
14:07:30 14                  For this motion since there is no ongoing
14:07:33 15   infringement because the patent is expired, the question is
14:07:35 16   if there was knowledge of the patent and knowledge of
14:07:37 17   infringement for that seventeen-month period on that
14:07:40 18   indirect infringement claim that would sort of inform the
14:07:44 19   viability of this second bucket of indirect infringement.
14:07:48 20                  THE COURT:  All right.  That was helpful.  All
14:07:50 21   right.  So we have read the papers, but I wanted to give you
14:07:56 22   an opportunity to argue anything else that you think we
14:08:02 23   should focus on.  So go ahead.
14:08:02 24                  MR. BERTA:  Thank you, Your Honor.  I'll just
14:08:13 25   try to be brief because we do talk -- we address most things

14:08:16  1    in the papers.  What I would say to put a finer point on it
14:08:21  2    is in our view, they rely a lot on the notice letter for
14:08:27  3    purposes of this issue of indirect infringement.  That
14:08:30  4    letter standing alone did not provide knowledge of the
14:08:33  5    patent.  If the Court follows the Momic decision, for
14:08:38  6    example, which is not controlling but of this district,
14:08:41  7    because the patent being talked about --
14:08:43  8              THE COURT:  Let's just say I look at that letter
14:08:47  9    and I say I think it gives notice of the patents.  My
14:08:53 10    question really is notice of infringement.  So if you want
14:09:01 11    to spend your time convincing me it doesn't give notice of
14:09:05 12    the patent itself, I guess you can, but I think you're
14:09:07 13    better off giving me highlights of why it doesn't give
14:09:12 14    notice of infringement.
14:09:13 15              MR. BERTA:  Fair enough, Your Honor.  And I will
14:09:16 16    do that.  So assuming that notice of the original patent is
14:09:19 17    notice of the re-exam patent, what that letter definitely
14:09:24 18    doesn't do is first, it mentions a product, you know, the
14:09:28 19    nexus one, but it does not claim -- it certainly doesn't --
14:09:30 20    if one were to follow cases like *Dynamic Data* which I
14:09:38 21    understand are not Your Honor and also not controlling but
14:09:41 22    of this district, it certainly doesn't explain infringement
14:09:44 23    in any way, but it also doesn't claim infringement.  I think
14:09:47 24    that is sort of where the key is that that letter as we say
14:09:50 25    in the reply we think looks to be carefully crafted to not

14:09:55  1  **create DJ jurisdiction because it doesn't make a claim of**
14:09:59  2  **infringement much less explain infringement sufficient to**
14:10:02  3  **give an inference of knowledge of infringement which --**
14:10:05  4            **THE COURT:  That was actually going to be one of**
14:10:08  5  **my questions.  Do you think that that language is**
14:10:10  6  **declaratory judgment jurisdiction?**
14:10:12  7            **MR. BERTA:  I think it is designed to not do so.**
14:10:17  8  **I do not think it gives declaratory judgment jurisdiction**
14:10:21  9  **because they do not make a claim of infringement, that would**
14:10:24 10  **be the response.**
14:10:25 11            **THE COURT:  Okay.**
14:10:25 12            **MR. BERTA:  And that I guess is our point since**
14:10:28 13  **Google never DJ'd them because that letter doesn't really**
14:10:32 14  **give, you know, under the law at the time it doesn't give DJ**
14:10:36 15  **jurisdiction and now to say twelve years later well you kind**
14:10:38 16  **of knew what we meant, why would we send a letter, I don't**
14:10:41 17  **think that's the same thing as then plausibly inferring that**
14:10:45 18  **Google would have knowledge of infringement which this Court**
14:10:49 19  **in *DoDots* acknowledged was part of the standard where there**
14:10:51 20  **is a letter at issue that doesn't actually even say**
14:10:54 21  **infringement much less under cases like *Dynamic Data* explain**
14:10:58 22  **how that infringement would have occurred.**
14:11:00 23            **That's our position on the letter.  Set aside**
14:11:02 24  **this issue of under Momic whether the re-exam is the same as**
14:11:05 25  **the original patent, because it doesn't claim infringement**

14:11:11   1   much less explain it that under those cases there is not
14:11:14   2   sufficient basis to infer knowledge of infringement which is
14:11:17   3   what is required.  Adding on top of that the product that
14:11:22   4   was mentioned there, which wasn't claimed to be infringed,
14:11:25   5   was discontinued shortly thereafter and was never sued and
14:11:29   6   will never be claimed for damages.  The product they
14:11:32   7   referenced as potentially of interest without claiming
14:11:36   8   infringement was long gone and never sued.  And the claims
14:11:41   9   themselves that were called out were all canceled.
14:11:44  10              I understand there is this argument of whether
14:11:47  11   or not in the re-exam certificate other claims were alive
14:11:50  12   that were substantively the same as those, but all of the
14:11:54  13   claims that are in that letter are canceled claims.  So
14:11:57  14   there is just no basis to assume that Google will go through
14:12:01  15   and reconstruct what happened in the re-exam, apply it to
14:12:06  16   some other product and thus come to a determination of
14:12:09  17   knowledge of infringement based on a letter that doesn't
14:12:12  18   even actually say -- it's quite careful I think it doesn't
14:12:17  19   say you infringe, and that's the essence of our argument on
14:12:21  20   this, Your Honor.
14:12:22  21              And I think the issues of the Moto citation we
14:12:26  22   dealt with in the paper, I'm happy to talk about it, but in
14:12:28  23   the Moto citation was a decade before the letter and before
14:12:32  24   everything else and wasn't by Google.  And generally
14:12:36  25   speaking we read the cases in this district with respect to

14:12:39  1   general industry knowledge of the fact of litigation as also
14:12:44  2   being insufficient to infer knowledge of infringement.  So I
14:12:45  3   think it's really the letter and in our view because the
14:12:47  4   letter doesn't say infringement, it certainly doesn't
14:12:50  5   explain infringement.  That's where we are.
14:12:53  6              Thank you, Your Honor.
14:12:54  7              THE COURT:  All right.  Thank you.  All right.
14:13:00  8   Plaintiff, do you want to respond?
14:13:02  9              MS. RICHARDS:  Your Honor, thank you.  Alison
14:13:04 10   Richards for DataQuill.
14:13:06 11              Where I want to start is Google LIVE4 and
14:13:10 12   Google's fundamental admission embedded in the slides with
14:13:14 13   the idea that there is no dispute about whether the notice
14:13:18 14   was sufficient for 287 purposes.  If you look at the statute
14:13:22 15   for 287, it says the damages are not recoverable except on
14:13:27 16   proof that the infringer was notified of the infringement.
14:13:30 17   And Google is not challenging that for 287 purposes.
14:13:34 18              Having admitted that the notice is sufficient to
14:13:36 19   notify them of infringement for 287, it doesn't make sense
14:13:40 20   to us for Google to deny knowledge of the patent and the
14:13:44 21   infringement.  For their motion related to inducement,
14:13:48 22   contributory and willful infringement, the issue is
14:13:51 23   knowledge, and knowledge is a lesser standard than notice in
14:13:58 24   the sense that knowledge comes from all sources.  There is
14:14:00 25   the notice letter and there is the complaint.  Said another

1  way, the letter is sufficient but not necessary.
2              Google just told you that the letter doesn't
3  make a claim for infringement.  I'm now on our slide 2.  If
4  you look at the In Re line it first identifies the patents
5  and then it says violation notice.  It then says, "The above
6  '304 patent has been the subject of litigation."  But then
7  says, "You may wish to have your patent counsel examine the
8  claims and tell us whether you either want an exclusive
9  license or whether you want a covenant not to sue."  It
10 doesn't say license or not, it says license or covenant not
11 to sue.
12             And then it says, "We believe a license will
13 benefit you by providing Google the ability to practice the
14 claims without violating rights under the patent."
15             Moving to slide 3, the letter then says, "Please
16 be advised that DataQuill is presently involved in
17 litigation.  DataQuill prefers to engage in discussion about
18 settlement."
19             So it seems like Google is fixating on the fact
20 that the literal word "infringement" isn't in there, but
21 there is certainly enough in this letter including violation
22 notice to make a claim of infringement.
23             At a minimum there is a fact issue about whether
24 this notice letter is sufficient to make a claim of
25 infringement.  It's not appropriate to be decided on a

14:15:23 1  motion to dismiss.

14:15:24 2  With respect to the explanation of infringement
14:15:26 3  argument, it's not a correct statement of law to say that
14:15:32 4  the explanation of infringement was required from the patent
14:15:35 5  owner related to what I said earlier.

14:15:37 6  THE COURT:  What's your best case for that?

14:15:41 7  MS. RICHARDS:  Well, really it all goes back to
14:15:45 8  the standard for what's required for inducement of
14:15:49 9  infringement.

14:15:53 10  THE COURT:  I saw that, though, in your slides
14:15:59 11  when I was browsing through them and there is another entry
14:16:03 12  that says it's not needed as a matter of law, or it's needed
14:16:08 13  and correct what they're saying, so it would help me if when
14:16:12 14  you say that's not needed you cite to me your best
14:16:16 15  authority.  And I understand when you're saying oh, look at
14:16:20 16  the standard, and if that's all you have, that's fine, but
14:16:28 17  is there a case where you can say someone saying you may
14:16:31 18  want to have your prosecution counsel look at this and not
14:16:35 19  give anymore specifics on infringement is sufficient, that
14:16:39 20  would be very helpful.

14:16:40 21  MS. RICHARDS:  Well, a few thoughts.  I don't
14:16:43 22  have a case that identifies elements that are not required.
14:16:48 23  I have the standard for induced infringement that the
14:16:51 24  alleged infringer knowingly induced infringement.  They have
14:16:56 25  to knowingly induce infringement.  I don't have a case that

```
14:16:59  1   says the patent owner doesn't have to explain it.  But I
14:17:02  2   also think if you look at the letter, the whole letter, not
14:17:06  3   just the part that Google excerpted, and it says there is a
14:17:10  4   violation notice, there is an explanation.  The infringement
14:17:14  5   case here is very straightforward, all phones that have an
14:17:19  6   Android operating system infringe the patents.  And the
14:17:22  7   letter says that Google has manufactured, offers for sale
14:17:26  8   and sold phones with Android.  It gives one example and it
14:17:30  9   says the example, I do believe of the Nexus 1, but it's not
14:17:35 10   completely devoid of an explanation even though an
14:17:38 11   explanation is not required.
14:17:49 12              THE COURT:  Okay.  Anything further?
14:17:54 13              MS. RICHARDS:  Thank you.  Google also argues
14:17:56 14   that the letter didn't identify the product at issue.  And
14:18:00 15   this is also incorrect on both the law and the facts.  The
14:18:05 16   relevant standard is, you know, both of these things we're
14:18:11 17   arguing about, you know, they've already admitted in a 287
14:18:15 18   context that the infringer was notified of the infringement,
14:18:18 19   but we're still arguing about this anyway.  The standard is
14:18:21 20   Google's knowledge from all sources which is not limited to
14:18:25 21   the notice letter.  The letter if you read the language is
14:18:30 22   not limited to the Nexus 1 line of products, that's an
14:18:34 23   example of one kind of Android phone.  Google's knowledge is
14:18:40 24   that all phones with Android and a touchscreen infringe.
14:18:44 25   That comes from the letter and the other sources filed in
```

```
14:18:47   1    the complaint, so it's irrelevant whether the phone is
14:18:50   2    called a Nexus 1 or Nexus 6 or the Pixel or the HTC Droid.
14:18:55   3              At the outset of the hearing Google suggested
14:18:59   4    that there is a randomness to what phones are accused of
14:19:02   5    infringement, but it's not, you know, it's not that there
14:19:05   6    are these random phones.  Google is closely working with
14:19:09   7    each of these phone companies to have Android on the phone
14:19:13   8    to make it work and have revenue sharing agreements.
14:19:17   9    They're heavily involved.  But the point is the product name
14:19:21  10    doesn't matter.  Google and the manufacturers change their
14:19:25  11    product names all the time, nearly constantly and there is
14:19:29  12    no law that requires DataQuill to renotice Google every time
14:19:34  13    a new phone name was changed or a new phone was introduced.
14:19:44  14              THE COURT:  Okay.  Anything else?
14:19:49  15              MS. RICHARDS:  No, I think we covered the
14:19:51  16    knowledge of the patent claims which I understand to be
14:19:54  17    their other argument.
14:19:59  18              THE COURT:  Okay.  All right.  Any reply?
14:20:08  19              MR. BERTA:  The only thing I would point to we
14:20:10  20    also said in the paperwork, it is plaintiff that has
14:20:13  21    definitely taken the position that the standards for notice
14:20:16  22    under Markman are distinct and separate and can't be relied
14:20:20  23    upon for cross purposes with respect to inducement and
14:20:22  24    that's in the papers at page 212.
14:20:28  25              THE COURT:  Okay.  Just give me a second.
```

```
14:20:38   1               All right.  Thank you everyone for the
14:21:26   2   arguments.  They were helpful.  I have before me Defendants'
14:21:30   3   motion to dismiss the claims of indirect infringement and
14:21:32   4   pre-expiration willfulness and Plaintiff's amended
14:21:36   5   complaint.  I am going to grant the motion.
14:21:38   6               First the law, the general law on pleading
14:21:41   7   requirements and in particular pleading induced infringement
14:21:43   8   is set forth in DoDots Licensing Sols LLC v. Lenovo Holding
14:21:50   9   Co., C.A. No. 18-098-MN, 2019 Westlaw 3069773 from back in
14:21:59  10   2019, and the law on pleading contributory infringement is
14:22:03  11   in AgroFresh, Inc. v. Essentiv LLC, C.A. No. 16-662-MN, and
14:22:09  12   then Westlaw 350620, also in 2019, and the requirement for
14:22:16  13   willfulness in CAO v. OSRAM, C.A. No. 20-690, I'm adopting
14:22:28  14   all of that law and using it in my ruling here today.
14:22:31  15               Indirect infringement and willfulness require
14:22:34  16   knowledge of the patents and knowledge of infringement.
14:22:37  17   Here I find that knowledge of the patent is sufficiently
14:22:40  18   pleaded.  The 2010 notice letter informs Google of the '304
14:22:45  19   patent.  Although the patent was later reexamined and many
14:22:48  20   things were canceled, the amended complaint alleges that
14:22:50  21   claims 101 of the reexamined '304 patent is identical to the
14:22:55  22   original dependent claim 21 rewritten in independent form
14:22:58  23   and original claim 21 was one of the claims noted in the
14:23:02  24   letter.  And I think that at this stage I need to draw all
14:23:05  25   reasonable inferences in Plaintiff's favor.  This is
```

```
14:23:12  1   sufficient.
14:23:12  2              Based on the allegations in the amended
14:23:15  3   complaint, however, I do not see allegations of willful
14:23:20  4   which would infer knowledge of infringement.  First I do not
14:23:21  5   read the notice letter as putting Google on notice of
14:23:24  6   infringement.  It does not state Google infringes or make a
14:23:28  7   claim of infringement.  And I agree that it appears to be
14:23:30  8   constructed to avoid inferring DJ jurisdiction and was
14:23:36  9   careful not to assert infringement.  The letter states that
14:23:39 10   Google may wish to have its patent counsel examine the
14:23:44 11   claims relevant to Google devices and systems to determine
14:23:48 12   whether a nonexclusive license or appropriate covenant is
14:23:52 13   needed.  It doesn't say that one is definitively needed.
14:23:57 14   And although it does follow-up by stating a belief that a
14:24:00 15   license would benefit Google by providing the ability to
14:24:04 16   practice claims of DataQuill's patent without violating
14:24:07 17   rights under the patent and any relevant rights which may
14:24:12 18   rest under a pending application, there is no substance
14:24:16 19   supporting that belief.  And even if I were to find that the
14:24:19 20   letter had provided notice of infringement of certain
14:24:22 21   products, I do not find any allegations from which I can
14:24:24 22   reasonably infer that Google was on notice of infringement
14:24:28 23   of any of the products currently accused of infringement.
14:24:32 24   It may be, for example, that the way these products work is
14:24:35 25   identical to the way earlier products worked relative to the
```

| | |
|---|---|
| 14:24:38  1 | infringement allegations, but that is certainly not pleaded. |
| 14:24:42  2 | I also don't find that it is sufficient to |
| 14:24:45  3 | allege knowledge of infringement that there was |
| 14:24:49  4 | industry-wide knowledge that this patent was being asserted |
| 14:24:52  5 | nor that another party a decade before cited the patent |
| 14:24:56  6 | during the prosecution of a patent that at some point is |
| 14:24:58  7 | required by Google.  So having found that knowledge of |
| 14:25:01  8 | infringement has not been adequately pleaded, I will dismiss |
| 14:25:04  9 | the claims of indirect infringement and I will not allow |
| 14:25:07 10 | willfulness to go forward. |
| 14:25:08 11 | The claims of direct infringement which are not |
| 14:25:13 12 | the subject of this motion will go forward.  And let me say |
| 14:25:16 13 | that in granting the motion I will do so right now without |
| 14:25:21 14 | prejudice.  I know that there is a significant history with |
| 14:25:24 15 | this patent and maybe the parties have a history as well and |
| 14:25:30 16 | perhaps there is something more that DataQuill can assert |
| 14:25:35 17 | plausibly allege knowledge of infringement.  Given the |
| 14:25:37 18 | unique circumstances in this case, though, with an expired |
| 14:25:40 19 | patent and where from the argument it's not clear that there |
| 14:25:45 20 | is more that could be asserted, I am going to say that |
| 14:25:48 21 | should DataQuill wish to amend to reassert indirect |
| 14:25:52 22 | infringement or willfulness, it should follow my procedures |
| 14:25:55 23 | for requesting leave to amend so that we can first determine |
| 14:25:58 24 | whether such amendment would be futile. |
| 14:26:01 25 | So that's my ruling and the transcript will |

```
14:26:04  1   serve as my ruling.  Are there any questions or other issues
14:26:11  2   that we need to discuss?
14:26:14  3                  First from the Plaintiff?
14:26:20  4                  MS. RICHARDS:  No.  Thank you, Your Honor.
14:26:21  5                  THE COURT:  All right.  Defendants?
14:26:24  6                  MR. BERTA:  No, Your Honor, not at this time.
14:26:28  7                  THE COURT:  All right.  It was brought up about
14:26:31  8   the license issue.  I think that's one that's just going to
14:26:35  9   have to play itself out for a while.  I don't think that it
14:26:39 10   sounded to me like we were going to take that out of the
14:26:43 11   ordinary course in this case.  So I would ask that that
14:26:49 12   issue not be raised again in any type of motion without
14:26:54 13   first addressing that with me and seeking leave to do so.
14:26:59 14                  All right.  Thank you everyone.
14:27:10 15                  MR. BERTA:  If the parties agree that it makes
14:27:12 16   sense to do that, would the Court be okay with us coming to
14:27:16 17   the Court and then letting you know that we both thought it
14:27:19 18   was a good idea to resolve this to hear the license issue?
14:27:22 19   Is that an acceptable way to go about that?
14:27:25 20                  THE COURT:  I think both parties would have to
14:27:27 21   agree it is dispositive and both parties would have to agree
14:27:31 22   that no other dispositive motions, that you would
14:27:34 23   essentially give up your ability to file later dispositive
14:27:38 24   motions if I determine that I shouldn't grant this motion.
14:27:42 25                  MR. BERTA:  Understood.  Thank you, Your Honor.
```

14:27:44  1                THE COURT:  But normally I don't do it just
14:27:47  2    because the parties think it's convenient for them because
14:27:50  3    it's not really an efficient use of my time in most
14:27:54  4    instances.
14:27:56  5                All right.  Thanks everyone.  Have a good rest
14:27:59  6    of the week and enjoy your Memorial Day weekend.
        7                   (Teleconference concluded at 2:27 p.m.)
        8
        9            I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
       10
       11                              /s/ Dale C. Hawkins
                                       Official Court Reporter
       12                              U.S. District Court